**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

  v.

CHARLES GRADY MOYER, *et al.*

        Defendants.

No. C 07-00510 SBA

**ORDER**

[Docket No. 50]

## INTRODUCTION

Before the Court is defendant Charles Grady Moyer's Ex Parte Motion to Set Aside Order of Sale Entered July 7, 2008 Based on Fraud or Mistake and in Violation of 26 U.S.C. § 6331(j) (the "Motion") [Docket No. 50]. For the reasons discussed below the Court GRANTS in part and DENIES in part the Motion. Specifically, under Federal Rule of Civil Procedure 62(b)(4), because Moyer has shown a strong likelihood of success on the merits of a mistake of law issue under Federal Rule of Civil Procedure 60(b)(1), and because the balance of hardships tips sharply in his favor, the Court STAYS its Order dated July 7, 2008, pending the Court's disposition of the Motion.

## BACKGROUND

On January 25, 2007, the government filed a Complaint under 26 U.S.C. §§ 7401 and 7402, seeking "to reduce to judgment outstanding federal tax assessments against defendant Charles Moyer." Docket No. 1 ¶ 1. The government alleges he had been assessed "for unpaid Trust Fund Recovery Penalties (TFRP) or unpaid employment taxes as" indicated in Table 1. *See id.* ¶ 5. It further alleges, despite timely notice and demand, he failed to pay the taxes, penalties, and interest indicated in Table 1, and thus as of February 14, 2007, owed $169,045.59 plus interest, penalties, and additions, less any credits. *Id.* ¶ 6. The government thus prays for a judgment in this amount. *Id.* at 2.

///

///

**Table 1**

**Tax Lien Information for Charles Moyer**

| Type of Tax / Tax Quarter | Date of Assessment | Assessed Balance | Tax, Interest & Penalties Owed as of 2/14/2007 | Notice of Tax Liens Filed in Contra Costa County |
|---|---|---|---|---|
| TFRP (9203) | 10/25/93 | $46,037.05 | $127,876.13 | 01/07/94 |
| TFRP (9212) | 12/27/93 | $15,559.78 | $41,169.46 | 05/17/96 |

*Id.* ¶ 5.

On August 22, 2007, the government filed a First Amended Complaint ("FAC"). *See* Docket No. 10 at 1. In addition to proceeding under 26 U.S.C. §§ 7401 and 7402, to reduce Moyer's outstanding tax assessments to judgment, the government added a claim to proceed under 26 U.S.C. § 7403(a), to foreclose tax liens on Moyer's residence, 243 Alicante Court, in Danville, California ("243 Alicante"). Docket No. 10 ¶¶ 1-2, 5. In the FAC, the government joined the following persons as defendants, under § 7403(b):[1] (1) Associated Fee Adjusters ("AFA"), FAC ¶ 6; (2) the Stephen E. Trettin and Pamela J. Trettin Family Trust (the "Trust"), *id.* ¶ 9; (3) the California State Board of Equalization (the "Board"), *id.* ¶ 8; (4) Cyrus Killen, *id.* ¶ 7; (5) Nino Gianelli, *id.* ¶ 10; (6) Wallace Kresley, *id.* ¶ 11; and (7) F.J. Soliven-Meglin, *id.* ¶ 12.[2]

In the FAC, the government alleges, under 26 U.S.C. §§ 6321 and 6322, liens arose in its favor on Moyer's property, as of the assessment dates indicated in Table 1. FAC ¶ 18. It then allegedly filed Notices of Federal Tax Lien against Moyer with the Contra County Recorder's Office (the "Recorder") on the dates indicated in Table 1. *Id.* ¶ 19. As such, the government alleges its liens attached to Moyer's property when they arose, and had continued to attach to his property through the filing of the FAC, without interruption. *Id.* ¶ 20. The government also alleges

///

---

[1]    Section 7403(b) requires the government to join as parties to an action brought under § 7403(a), all persons having liens upon or claiming any interest in a property involved in an action brought under § 7403.

[2]    Neither AFA nor Killen have ever appeared in this matter, nor is it clear whether the government ever served them.

243 Alicante belonged solely to Moyer "for purposes of the tax lien provisions of the Internal Revenue Code." *Id.*

Thus, in the FAC, the government prays for a judgment of $169,045.59, plus interest and statutory additions, going back to February 14, 2007. *Id.* at 4. It also prays for the Court find the government has liens against 243 Alicante for unpaid federal taxes in this amount, and to foreclose these liens and order 243 Alicante sold. *Id.* at 4-5.

On September 4, 2007, Moyer answered the FAC. *See* Docket No. 12 at 1 ("Answer"). He denies AFA, Killen, or Kresley have any interest in 243 Alicante. Answer ¶¶ 6-7, 11. He admits, however, the liabilities indicated in Table 1, and that he failed to respond to the government's timely notice and demand to satisfy them. *Id.* ¶¶ 15-16. As affirmative defenses, however, he alleges: (1) the government's statute of limitations ran under 26 U.S.C. § 6502; (2) its liens expired under 26 U.S.C. § 6322; (3) the government had not inspected the property prior to sale as required by 26 U.S.C. § 6331(f) and (j); and (4) he was not "a responsible officer against whom an assessment for employment taxes was properly made" under 26 U.S.C. § 6672. Answer at 3.

On September 12, 2007, Gianelli answered, alleging he had a judgment lien against Moyer for over $28,000, recorded with the Recorder on April 18, 2001. Docket No. 13 ¶ 1. He also alleges the government's 1994 and 1996 liens expired and were released, though the government re-filed on March 20, 2006, thus holding liens junior to his. *Id.* ¶ 2. On September 27, 2007, the Court approved stipulations whereby Kresley and Soliven-Meglin disclaimed any interest in 243 Alicante. *See* Docket Nos. 15-16.

On October 5, 2007, the parties filed a joint CMC statement. *See* Docket No. 17. In it, they indicated the government and Moyer disagreed whether 243 Alicante had sufficient equity to pay all his creditors. *Id.* ¶ 2. Also, Moyer disputed the extent and priority of AFA's and Killen's liens, but did not dispute the extent of the following liens in this order of descending priority: the Board, Gianelli, the Trustees, the government. *Id.* The trustees of the Trust stated they believed by order of the bankruptcy court, their lien was senior to everyone else's except Gianelli's, but they needed to conduct more research. *Id.* ¶ 3.

///

3

On October 16, 2007, the Board answered, but due to a lack of information could only admit it had an interest in 243 Alicante. *See* Docket No. 18. The next day, the Court held a CMC, setting a bench trial for May 28, 2008, and referring this matter to magistrate judge for settlement. *See* Docket Nos. 19-20 and entry dated Oct. 19, 2007.

On October 22, 2007, Stephen E. Trettin and Pamela J. Trettin as trustees for the Trust (the "Trustees") answered.[3] *See* Docket No. 21. They claimed their lien had been recorded with the Recorder on February 17, 2006, *after* the government's liens had already expired and been released, but *before* the government recorded a Revocation of Certificate of Release of Federal Lien Tax. *Id.* ¶¶ 9, 23. On January 9, 2008, Gianelli assigned his interest to FAT. *See* Docket No. 27.

On January 31, 2008, the government and Moyer stipulated that a judgment "for the tax periods ending March 31, 1992 and December 31, 1992 be entered against him and in favor of the United States in the total amount of $169,045.59, plus statutory interest and additions from February 14, 2007 until paid." Docket No. 28. On February 5, 2008, the Court approved this stipulation. Docket No. 29.

On April 7, 2008, the Court conditionally dismissed this matter, and gave the parties 60 days to settle, and provided if they did not, any of them could file to reopen it within that time. Docket No. 31. On May 2, 2008, the government, Moyer, the Trustees, the Board, and FAT stipulated to a settlement. See Docket No. 32. They agreed they disagreed as to the priority of the competing liens. *Id.* ¶ 6. Moyer agreed to obtain $822,500 by refinancing 243 Alicante or other means. *Id.* ¶ 7. The other parties agreed to divide this amounts as follows in full satisfaction of their claims secured by 243 Alicante: (1) $67,500 to the government; (2) $373,750 to the Trustees; (3) $354,250 to the Board; (4) $15,000 to FAT; and (5) $12,000 to the California Employment Development Department (the "EDD").[4] *Id.* ¶ 8. Moyer agreed to refinance 243 Alicante and deposit $822,500 into an escrow account, from which these distributions would be made by May 16, 2008. *Id.* ¶¶ 8.A, 8.C. The parties agreed if the distributions did not occur by May 16, 2008, then any of them could move to

---

[3]  Although the government failed to sue to the trustees, and instead incorrectly sued the Trust, the trustees answered, rather than challenge the error.

[4]  The parties do not explain how the EDD became involved in this matter.

reopen this matter. *Id.* ¶ 8.E. The Court approved this stipulation on May 8, 2008. *See* Docket No. 33.

On May 19, 2008, the government filed a Motion to Reopen Case on the grounds Moyer failed to comply with the settlement terms by May 16, 2008. Docket No. 36. The Board and the Trustees joined in this motion. Docket Nos. 37-38. On May 28, 2008, the Court reopened this matter. *See* Docket No. 39.

On June 13, 2008, the government filed a Motion for Order of Sale (the "Sale Motion") [Docket No. 42], for 243 Alicante. Sale Mot. ¶ 5. With its motion, the government filed a proposed order, indicating the sale is authorized by 28 U.S.C. §§ 2001 and 2002 and 26 U.S.C. §§ 7402 and 7403. Docket No. 43 ¶ 1. It further provides any sale is free and clear of the interests held by Moyer, the Board, the Trust, FAT, Gianelli, Kresley, and Soliven-Meglin, but not AFA or Killien. *Id.* ¶¶ 5a.-b. And, it provides any sale is made "without right of redemption." *Id.* ¶ 5.n. Further, it orders all residents to leave 243 Alicante and remove all personal property within 30 days of the date of the order. *Id.* ¶ 7.

The Sale Motion was noticed for a hearing on July 22, 2008. *See* Sale Mot. at 1. The Trustees and the Board filed statements of non-opposition on June 19 and 25, 2008, respectively. *See* Docket Nos. 44-45. As of July 1, 2008, Moyer had not filed an opposition. On July 2, 2008, the Trustees assigned their lien to FAT. *See* Docket No. 46. On July 7, 2008, the Court granted the unopposed Sale Motion. *See* Docket No. 47.

On July 25, 2008, Moyer filed his Ex Parte Motion to Set Aside Order of Sale Entered July 7, 2008 Based on Fraud or Mistake and in Violation of 26 U.S.C. § 6331(j) (the "Motion") [Docket No. 50]. In the Motion, Moyer indicates he failed to oppose the Sale Motion, because he did not know an opposition was required. Mot. at 2:5-6. He also notes the Sale Motion had been set for a hearing on July 22, 2008, but the Court granted it on July 7, 2008, allowing the forced sale of what has been his family's personal residence for the past 32 years. *Id.* at 1:17-21, 2:7-10.

In his Motion, Moyer presents two arguments for the Court setting aside its July 7, 2008 Order. First, he argues there is no equity in 243 Alicante for the government to take, barring foreclosure under 28 U.S.C. § 6331(j). Mot. at 1:21-23, 2:15-4:15. Second, he argues he never

1    agreed to a levy and sale, in the event he were unable to refinance, contrary to the government's

2    representations in the Sale Motion. *Id.* at 1:23-2:4, 4:16-24. Based on the foregoing, Moyer asks the

3    Court to accept the Motion as an opposition to the Sale Motion, and to ex parte vacate its July 7,

4    2008 Order, or stay it until the Court can hold a hearing regarding vacating it. Mot. at 2:10-12, 5.

5         On July 29, 2008, FAT filed a Memorandum in Opposition to the Motion (the "Opposition").

6    *See* Docket No. 54 (the "Opp'n"). In it, FAT argues Moyer is not entitled to ex parte relief under

7    Civil Local Rule 7-10, his conduct is not excusable neglect under Civil Local Rules 3-9 and 7-3,

8    § 6331 is inapplicable to this matter, and his failure to oppose the Sale Motion constituted his

9    agreement to levy and distraint. Opp'n at 2-3. The government joined in FAT's Opposition, without

10   providing any additional argument of its own. *See* Docket No. 55.

11                                 **ANALYSIS**

12   **I.**      **Moyer may request a stay ex parte under Federal Rules of Civil Procedure 60 and 62**

13          **and Local Rule 7-10.**

14         In its Opposition, FAT argues Moyer is not entitled to ex parte relief, because he failed to

15   comply with Civil Local Rule 7-10, which requires a movant have a statute, rule, or order which

16   provides for ex parte relief and requires the movant to cite it in their pleading. Opp'n at 2. The

17   Court disagrees. Moyer complied with Local Rule 7-10, because he filed his Motion under Federal

18   Rule of Civil Procedure 60, which entitled him under to request a stay ex parte under Federal Rule of

19   Civil Procedure 62.

20         Under Local Rule 7-10, "[u]nless otherwise ordered by the assigned Judge, a party may file

21   an ex parte motion, that is, a motion filed without notice to opposing party, only if a statute, Federal

22   Rule, local rule or Standing Order authorizes the filing of an ex parte motion in the circumstances."

23   Under Rule 62, "the court may stay the execution of a judgment--or any proceedings to enforce

24   it--pending disposition of any of the following motions: . . . (3) under Rule 59, for a new trial or to

25   alter or amend a judgment; or (4) under Rule 60, for relief from a judgment or order." Fed. R. Civ.

26   P. 62(b).

27   ///

28   ///

Under Federal Rule of Civil Procedure 59(e), "A motion to alter or amend a judgment must be filed no later than 10 days after the entry of the judgment." Under Federal Rule of Civil Procedure 60(b):

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; . . .

Fed. R. Civ. P. 60(b).

"A motion under Rule 60(b) must be made within a reasonable time--and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." *Id.* 60(c)(1). Generally, a post-order motion requesting a substantive change in an order, as opposed to a clerical change, is considered a Rule 59(e) motion, if filed within ten days of entry, otherwise it is considered a Rule 60(b) motion. *Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp.*, 248 F.3d 892, 898-99 (9th Cir. 2001).

In this case, the Court issued its Order for the sale of 243 Alicante, on July 7, 2008. Moyer filed the ex parte Motion on July 25, 2008. In it he asked the Court to vacate its July 7, 2008 Order, or to stay it pending a hearing on his request to vacate it, due to his excusable neglect in failing to oppose foreclosure, due to the misrepresentation he had agreed to foreclosure, or the Court's mistake of law in allowing a foreclosure where the government takes nothing. Because Moyer requested ex parte a substantive change in an order, more than ten days after its entry, he did not file an ex parte Rule 59 motion, but filed an ex parte Rule 60(b) motion. Thus, under Rule 62, the Court may stay its July 7, 2008 Order pending its disposition of this Rule 60 motion. Although neither Rule 60 nor 62 *expressly* provide Moyer may request a stay ex parte, Rule 62 *impliedly* provides he may do so, as it allows the Court to issue a stay prior to a hearing on his Motion, or even prior to its service on the

///

///

///

other parties.[5] Thus, by filing his Rule 60 motion, Moyer was impliedly entitled request a stay ex parte under Rule 62, which request was authorized by "Federal Rule" as required by Local Rule 7-10.

FAT also argues, however, Moyer failed to comply with the Local Rule 7-10, because he failed to cite Rules 60 and 62 in his Motion as the grounds for his ex parte request for a stay. Opp'n at 2. The Court disagrees. Despite this omission, Moyer unequivocally requests in his Motion that the Court vacate a prior order more than ten days after it issued, due to excusable neglect, fraud, or legal mistake. Thus, he clearly and sufficiently noticed all parties he was proceeding under Rule 60, which the parties should have known entitled the Court to consider a stay under Rule 62. Thus, Moyer's failure to mention Rule 60 or 62 in his Motion does not prevent him from requesting a stay ex parte. In conclusion, under Rule 62 and Local Rule 7-10, Moyer was entitled to request a stay ex parte under Rule 62, because he filed his Motion under Rule 60.

## II. Moyer is entitled to a stay under Rule 62.

Under Rule 62, "On appropriate terms for the opposing party's security, the court may stay the execution of a judgment--or any proceedings to enforce it--pending disposition of" Moyer's Rule 60 Motion. *See* Fed R. Civ. P. 62(b), (b)(4). As the term "may" denotes, the decision whether or not to grant a stay is within the Court's discretion. *U.S. for Use and Benefit of Larkin v. Platt Contracting Co.*, 324 F.2d 95 (1st Cir. 1963). Although it appears no court in the Ninth Circuit has ever expressly considered what factors should be used to determine whether or not a stay would be appropriate under Rule 62(b), this Court finds it proper to consider the same factors used to determine whether or not to stay an action under Rule 62(c).

Under Rule 62(c), "While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an

---

[5] This would be an example of "pure" ex parte relief. For clarification, the Court notes a "pure" ex parte motion is one filed and disposed of without any notice to other parties. *See In re Intermagnetics America, Inc.*, 101 B.R. 191, 193 (C.D. Cal. 1989). In contrast, a "hybrid" ex parte motion is one filed and styled as an "ex parte" motion, but where notice is provided to other parties, though relief is requested in the short term and without a hearing or a formal briefing schedule. *See id.* In this case, Moyer's ex parte request was a hybrid one, as he sought ex parte relief after notice to all other parties.

injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(c). In determining whether to grant a stay under this rule, courts consider four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

In the Ninth Circuit, courts employ a sliding scale to govern this determination:

> At one end of the continuum, the moving party is required to show both a probability of success on the merits and the possibility of irreparable injury. At the other end of the continuum, the moving party must demonstrate that serious legal questions are raised and that the balance of hardships tips sharply in its favor.

*Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir.1983) (internal citations omitted).

Under the sliding scale theory, a party "need not demonstrate that he [or she] will succeed on the merits, but must at least show that his [or her] cause presents serious questions of law worthy of litigation." *Topanga Press, Inc. v. City of Los Angeles*, 989 F.2d 1524, 1528 (9th Cir. 1993), *cert. denied*, 511 U.S. 1030 (1994).

The Court adopts these factors for use under Rule 62(b), because these are the questions and concerns district courts have in considering a stay pending disposition of a post-trial-motion. The Court also adopts the sliding scale test as it provides flexibility in balancing varying degrees of possible success by a movant on their post-trial motion against varying degrees of possible harms posed to parties and non-parties were a stay to issue or not. As discussed below, applying the *Hilton* factors and the Ninth Circuit's sliding scale test to the facts and circumstances of this case, the Court finds Moyer is entitled to a stay under Rule 62.

### A. Moyer has made a strong showing that he is likely to succeed on the merits.

Moyer's burden under this *Hilton* factor is to show his Motion is likely to succeed under Rule 60(b). In his Motion, Moyer asserts three grounds for Court vacating its July 7, 2008 Order: excusable neglect, fraud, and mistake of law. Of these, Moyer has not raised a serious question

regarding excusable neglect or fraud. He has, however, shown a strong likelihood of success on the merits of the mistake of law issue.

### 1. Excusable Neglect

With regards to excusable neglect, Moyer has not raised a serious question. Rule 60(b) provides the Court "may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . (1) mistake, inadvertence, surprise, or excusable neglect[.]" Fed. R. Civ. P. 60(b), (b)(1); *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'hip*, 507 U.S. 380, 393 (1993); *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1223 (9th Cir. 2000). In determining whether neglect is excusable, courts use an equitable test "that depends on at least four factors: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Bateman*, 231 F.3d at 1223-24 (citing *Pioneer*, 507 U.S. at 395); *see also Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir.1997).

Here, Moyer argues the Court should vacate its July 7, 2008 Order, because he failed to file an opposition to the Sale Motion, because he did not know he was supposed to file one. Mot. at 2:5-6. FAT argues this is not excusable neglect because Civil Local Rule 3-9(a) states, "A person representing him or herself without an attorney is bound by the Federal Rules, as well as by all applicable local rules." Opp'n at 2. FAT also points out Civil Local Rule 7-3 states, "Any opposition to a motion must be served and filed not less than 21 days before the hearing date." Opp'n at 2.

The Court agrees that under the third *Pioneer* factor alone, "the reasons for the delay," Moyer has not shown excusable neglect, only mere neglect. As the Ninth Circuit has held, "The hazards which beset a layman when he seeks to represent himself are obvious. He who proceeds pro se with full knowledge and understanding of the risks does so with no greater rights than a litigant represented by a lawyer . . . ." *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007) (quoting *Jacobsen v. Filler*, 790 F.2d 1362, 1365 n. 5 (9th Cir. 1986) (quoting *United States v. Pinkey*, 548 F.2d 305, 311 (10th Cir. 1977))). Because Moyer made no effort whatsoever to familiarize himself with the Federal Rules of Civil Procedure or the Civil Local Rules, he cannot claim excusable

neglect. Thus, he has not raised a serious question regarding this grounds for relief under Rule 60(b)(1).

### 2. Fraud or Misrepresentation

Moyer has not raised a serious question with regards to fraud or misrepresentation. Rule 60(b) provides, "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . . (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party[.]" Fed. R. Civ. P. 60(b), (b)(3); *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1260 (9th Cir. 2004). "To prevail, the moving party must prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct and the conduct complained of prevented the losing party from fully and fairly presenting the defense." *Casey*, 362 F.3d at 1260 (quoting *De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 880 (9th Cir. 2000)). Further, the fraud must "not be discoverable by due diligence before or during the proceedings." *Casey*, 362 F.3d at 1260 (quoting *Pac. & Arctic Ry. and Navigation Co. v. United Transp. Union*, 952 F.2d 1144, 1148 (9th Cir. 1991)).

In this case, the Proposed Order for the Sale Motion begins, "The United States of America and the defendants, through the undersigned, stipulate and agree that the court decree the sale of the subject property as follows[.]" Docket No. 43 at 1. Moyer argues he is a defendant, and while he agree to refinance his home, he never agreed to sell it if he were unable to refinance, as suggested by the Proposed Order. Mot. at 1:23-2:4, 4:16-24. FAT argues Moyer's actions have put himself in this situation, and he failed to file an opposition; thus, the government committed no fraud. Opp'n at 3.

The Court holds no fraud or misrepresentation occurred here, because the Court did not rely on the Proposed Order's introductory sentence in granting the Sale Motion. The Court relied on the body of the Proposed Order, the body of the Sale Motion, and the fact *Moyer failed to oppose the latter*. While the sentence in question appears not to belong in the Proposed Order, it is not clearly and convincing evidence of fraud, as opposed to negligent proofreading. Further, unlike Moyer's failure to file an opposition, the misplaced sentence was not a substantial cause in the Court granting

///

11

1  the Sale Motion. Thus, Moyer has not raised a serious question with regards to fraud or

2  misrepresentation as grounds for relief under Rule 60(b)(3).

3          **3.**    **Mistake of Law**

4         Moyer has shown a strong likelihood of success on the merits on the issue of a mistake of law

5  by the Court. Under Rule 60(b), the Court "may relieve a party or its legal representative from a

6  final judgment, order, or proceeding for . . . (1) mistake . . . ." Fed. R. Civ. P. 60(b), (b)(1). The

7  "mistake" component of Rule 60(b)(1) allows the Court to correct its own error of law. *See*

8  *Kingsvision Pay-Per-View v. Lake Alice Bar*, 168 F.3d 347, 350 (9th Cir. 1999) (citing *Liberty Mut.*

9  *Ins. Co. v. EEOC*, 691 F.2d 438, 441 (9th Cir. 1982)).

10         In this case, Moyer argues had the Court had his opposition to the Sale Motion before its

11  disposition, the Court would have known the government could not proceed with the sale, because

12  there is no equity in 243 Alicante for the government to take, which bars foreclosure under 28 U.S.C.

13  § 6331(j). Mot. at 1:21-23, 2:15-4:15. Specifically, Moyer claims the following liens are senior to

14  the government's: Gianelli's for $29,232.74, the Trust's for $555,000, the Board's for $519,912.79,

15  and EDD's for $12,000, for a total of $1,116,145.53.[6] Mot. ¶ 3. Moyer also provides declarations

16  from two licensed real estate appraisers, who put 243 Alicante's value at $860,000 and $925,000, on

17  July 10 and 11, 2008, respectively. Docket Nos. 53 (Decl. of Alex Pavlovsky) and 52 (Decl. of Joe

18  (Jody) Reid). As a result, Moyer claims, were the government to foreclose on his home, it would

19  realize nothing, given its most junior position. Mot. ¶ 3. In opposition, FAT argues § 6331 is

20  inapplicable to this matter, because the sale is proceeding under 26 U.S.C. § 7403. Opp'n at 2. *Not*

21  *FAT nor any other party disputes Moyer's allegations that the government would realize nothing*

22  *from a foreclosure.* As discussed below, this is a very serious, supported, and unopposed allegation

23  which appears to bar the Court from ordering the sale of 243 Alicante, under 26 U.S.C. § 7403.

24  ///

25

26  [6]    An examination of a July 10, 2008 title report, attached as Exhibit "B" to the Motion and
summarizing public records, shows Gianelli recorded a lien in 1992 for $10,286.19, Mot., Ex. "B"

27  at 6, the Trust recorded a lien in 2006 for $555,000, *id.* at 8, the Board recorded liens in 2002
totaling $563,271.99, *id.* at 7, and EDD recorded a lien in 2003 for 5,785.30, all totaling

28  $1,134,343.48, without penalties or costs. The Court notes but is not overly concerned by the
$18,197.95 difference between Exhibit "B" and Moyer's figures in his Motion.

Turning first to the Internal Revenue Code, 26 U.S.C. § 6321 provides for liens in favor of the United States when a person fail to pay their taxes. As this section states:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6321; *U.S. v. Rodgers*, 461 U.S. 677, 681-82 (1983).

The United States may enforce such liens by three methods: (1) an administrative levy under 26 U.S.C. § 6331,[7] *Rodgers*, 461 U.S. at 682-83; (2) "simply sue for the unpaid amount, and, on getting a judgment, exercise the usual rights of a judgment creditor[,]" *see* 26 U.S.C. §§ 6502(a), 7401, 7402(a)[,]" *Rodgers*, 461 U.S. at 682; or (3) proceed to enforce the lien or subject a property to the payment of taxes owed, under 26 U.S.C. § 7403,[8] *Rodgers*, 461 U.S. at 680-82. The first method is "administrative" because the United States may levy on its own, without obtaining a court order. 26 U.S.C. § 6331; *Rodgers*, 461 U.S. at 682-83. In contrast, the second and third methods require the United States to file an action in court. *See* 26 U.S.C. §§ §§ 6502(a), 7401, 7402(a), 7403(a); *Rodgers*, 461 U.S. at 680-83. These three methods of enforcing liens for unpaid taxes are

---

[7] This section states, in part:
> If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax.

26 U.S.C. § 6331(a); *see Rodgers*, 461 U.S. at 682.
"The term 'levy' as used in this title includes the power of distraint and seizure by any means." 26 U.S.C. § 6331(b). Thus, this section allows the United States to seize and sell property. *See id.*

[8] This section states, in part:
> (a) Filing.--In any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof, whether or not levy has been made, the Attorney General or his delegate, at the request of the Secretary, may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under this title with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability. . . .

26 U.S.C. § 7403(a); *see Rodgers*, 461 U.S. at 680-81.

1  independent and distinct. *Rodgers*, 461 U.S. at 680-83. "The common purpose of this formidable

2  arsenal of collection tools is to ensure the prompt and certain enforcement of the tax laws in a system

3  relying primarily on self-reporting." *Id.* at 683.

4      Under § 7403(c):

5          The court shall, after the parties have been duly notified of the action, proceed

6      to adjudicate all matters involved therein and finally determine the merits of all

7      claims to and liens upon the property, and, in all cases where a claim or interest of the

8      United States therein is established, may decree a sale of such property, by the proper

9      officer of the court, and a distribution of the proceeds of such sale according to the

10     findings of the court in respect to the interests of the parties and of the United States.

11  26 U.S.C. § 7403(c).

12      Under this subdivision, the Court need *not* order the sale of a property. *See id.*; *U. S. v.*

13  *Overman*, 424 F.2d 1142, 1146 (9th Cir. 1970). As the Ninth Circuit has held:

14          We emphasize that section 7403 is cast in mandatory terms only in respect of

15      the establishment of the Government's lien, the joinder of all persons interested in the

16      property involved, and the determination of their respective interests. The remainder

17      of the section confers broad discretionary powers upon the court in shaping a decree

18      designed to work substantial justice among all interested persons. 'Congress (in

19      enacting § 7403) intended that the Court function with the full traditional flexibility

20      of the Chancellor, *United States v. Morrison*, 5 Cir., 247 F.2d 285.' (*United States v.*

21      *Boyd* (5th Cir.) 246 F.2d 477, 481, *cert. denied* (1957) 355 U.S. 889, 78 S.Ct. 261, 2

22      L.Ed.2d 188.)

23  *Overman*, 424 F.2d at 1146; *also see Rodgers*, 461 U.S. at 705-06 (citing circuit cases, including

24  *Overman*, and agreeing that "§ 7403 does not require a district court to authorize a forced sale under

25  absolutely all circumstances . . . some limited room is left in the statute for the exercise of reasoned

26  discretion.")

27      In exercising its discretion, a court should *not* order a property's sale, where the government

28  will not benefit from it.

14

Merely because the statute speaks in terms of foreclosure does not compel the court to use that remedy. If under controlling legal principles, the lien does not exist, if it has been lost, if the property is not that of the taxpayer, if the Federal tax lien is junior to undisputed prior liens which will exhaust the full value of the property, a decree of foreclosure would be neither appropriate nor effective.

*U.S. v. Boyd*, 246 F.2d 477, 481 (5th Cir. 1957); *see also U.S. v. Morrison*, 247 F.2d 285, 291 (5th Cir. 1957) (A court should not quiet title under 26 U.S.C. § 2410 where the government either has no lien or would not realize any gain from judicial or other sale, as the government would neither gain nor lose anything from the court's action.).

In this case, the Court finds that because the Sale Motion was not subject to an adversarial process, the law may have been misapplied in granting it. In particular, based on the foregoing the Court has at least three concerns. First and foremost, Moyer argues very persuasively that if the government were to foreclose, it would realize nothing. Admittedly, FAT is correct that Moyer's reliance on § 6331(j)[9] is misplaced, because the government is not proceeding by administrative levy under § 6331. Nonetheless, FAT fails to note Moyer's argument applies with equal force and vigor to a court ordered sale under § 7403, which the government seeks to utilize here. As *Rodgers*, 461 U.S. at 705-06, makes clear, a foreclosure is ordered under § 7403 solely in the Court's discretion, which the law counsels it not do, if the government will realize nothing thereby, *Boyd*, 246 F.2d at 481; *see also Morrison*, 247 F.2d at 291.

---

[9] Subdivision (j) provides:
(j) No levy before investigation of status of property.--
    (1) In general.--For purposes of applying the provisions of this subchapter, no levy may be made on any property or right to property which is to be sold under section 6335 until a thorough investigation of the status of such property has been completed.
    (2) Elements in investigation.--For purposes of paragraph (1), an investigation of the status of any property shall include--
        (A) a verification of the taxpayer's liability;
        (B) the completion of an analysis under subsection (f);
        (C) *the determination that the equity in such property is sufficient to yield net proceeds from the sale of such property to apply to such liability*; and
        (D) a thorough consideration of alternative collection methods.
26 U.S.C. § 6331(j) (emphasis added).

Secondly, the Court is concerned the July 7, 2008 Order purports to authorize a sale under both §§ 7402 and 7403. Order ¶ 1. If the government wishes to proceed under the former section, then it should proceed as a judgment creditor. *Rodgers*, 461 U.S. at 682. As such, it should be bound to enforce its stipulated judgment with Moyers under Federal Rule of Civil Procedure 69,[10] and not by a court ordered sale under §7403.

Alternatively, if the government wishes to proceed under § 7403, then as it did here, it may reach a settlement with defendants, and thus avoid the need for the Court to "adjudicate all matters involved and finally determine the merits of all claims to and liens upon the property[.]" See 26 U.S.C. § 7403(c). But, because a sale is solely within the Court's discretion, it must still ensure "a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and the United States." *See id.* In other words, the Court must be given the chance to use its "broad discretionary powers . . . in shaping a decree designed to work substantial justice among all interested persons." *See Overman*, 424 F.2d at 1146. This is a special concern here, where foreclosure appears unwarranted, but the Court was deprived of the opportunity to determine as such.

Finally, the Court's third concern is the sale is to occur "without right of redemption." Order ¶ 5.n. Although Congress has provided a statutory right of post-sale redemption for administrative levies, 26 U.S.C. § 6337(b) (180 days post-sale), Congress has not provided any such right for foreclosures, including those under § 7403. *See United States v. Heasley*, 283 F.2d 422, 427 (8th Cir. 1960) (discussing 28 U.S.C. § 2001 *et seq.*); *U.S. v. Kilgore*, No. 93-1094 PFK, 1994 WL

---

[10] This rule states in part:

> A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution--and in proceedings supplementary to and in aid of judgment or execution--must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

Fed. R. Civ. P. 69(a)(1).

Under the "unless the court directs otherwise" clause, the Court apparently could order 243 Alicante sold under 28 U.S.C. § 2001 *et seq.* Thus, whether the government proceeds under § 7402 or § 7403 would seem to make little difference. The problem in this case, however, is because the government has not identified whether it is proceeding under § 7402 or § 7403, neither the parties nor the Court know if the government is bound by the statutory dictates of § 7403. Although the Court could use its equitable powers to apply the same statutory oversight and protections provided in § 7403, were the government to proceed under § 7402, the Court has been deprived of the opportunity to do either, in this case.

401066, *2 (D. Kan. July 5, 1994) (unreported); *United States v. Jones*, 699 F.Supp. 248, 251 (D. Kan. 1988). Nonetheless, courts have the equitable power to establish a redemption period post-foreclosure. *Kilgore*, 1994 WL 401066 at *2-*3 (authorized by 28 U.S.C. § 2001 providing sale proceeds on terms as court directs); *United States v. Curry*, 561 F.Supp. 429, 431 (D. Kan. 1983) (finding it "unnecessarily harsh" to deprive debtors of post-foreclosure redemption rights); *United States v. Montgomery*, 268 F.Supp. 787, 790 (D. Kan. 1967) (authorized by 28 U.S.C. § 2001); *but see U.S. v. Great Plains Gasification Assocs.*, 813 F.2d 193, 196 (8th Cir. 1987) (foreclosure extinguishes equitable right of redemption). In addition, at least one Ninth Circuit court has recognized that state redemption laws operate in the face of a foreclosure under § 7403. *U.S. v. Garcia*, 789 F.Supp. 1089, 1090-92 (W.D. Wash. 1991). In this case, however, no determination was ever made as to whether such redemption should be provided.

In conclusion, these three concerns suggest to the Court that because the Sale Motion was not subject to an adversarial process, the law may have been misapplied in granting it, as sale may have been unwarranted under §§ 7402 or 7403. As such, Moyer has shown a strong likelihood of success on the merits of the issue of a mistake of law by the Court, under Rule 60(b)(1).

### 4. Moyer's Motion was Timely

It is not enough, however, for Moyer to show a likelihood of substantive success on the merits of his Motion under Rule 60(b)(1), he must also show a likelihood of procedural success. In this case, Moyer has done this, as he filed his Motion on July 25, 2002, which was within a reasonable time and within one year of the Court's July 7, 2008 Order. *See* Rule 60(c)(1).

### B. Moyer will be irreparably injured absent a stay.

Turning to the second *Hilton* factor, if the Court does not grant a stay under Rule 62(b)(4), the government will foreclose on Moyer's personal residence for the past 32 years, without a right of redemption. He will thus be irreparably injured absent a stay.

### C. Issuance of the stay will not substantially injure other parties.

Looking at the third *Hilton* factor, if the Court grants a stay under Rule 62(b)(4), it will only last until the Court disposes of the Motion. Further, the creditors in this matter have liens, in some instances, going back to 1992, while some are as recent as 2003. While the creditors have been

waiting for payment some time, a further slight delay will not substantially injure them, especially when their liens are attached to 243 Alicante, a physically and financially secure asset, and they can claim interest for any delay in payment.

**D.      The public interest lies with protecting due process.**

The public interest in this case is in properly collecting outstanding federal tax liens under the processes established by § 7403 and Rules 60 and 62.

**E.      *Lopez*'s balancing test favors a stay.**

Moyer has shown he would likely succeed under Rule 60(b)(1) in showing the Court should not have ordered the sale of 243 Alicante. As such, he need not show substantial irreparable harm, to obtain a stay. Nonetheless, he has shown it, because failing to grant a stay would allow the sale of his home, without a right of redemption. Balanced against Moyer's showing of success and harm, the Court finds a stay would not substantially injure the other parties. Lastly, the Court notes the public interest here favors ensuring any forced sale follows the policies underlying § 7403 and Rules 60 and 62. As such, *under Lopez*'s sliding scale test, the balancing of merit and hardships strongly favors Moyer, who is thus entitled to a stay under Rule 62(b)(4).

**F.      No security is required.**

Rule 62(b) provides the Court may stay its July 7, 2008 Order, "[o]n appropriate terms for the opposing party's security . . . ." Although it appears no court in the Ninth Circuit has ever expressly considered what factors should be used to determine whether or not security should be required under Rule 62(b), this Court finds it proper to consider essentially the same factors used under Rule 62(d)[11] to determine whether or not security should be required for a stay pending an appeal. When making this determination, courts often consider what are known as the *Dillon* factors:

---

[11] This rule states:
　　　　If an appeal is taken, the appellant may obtain a stay by supersedeas bond, except in an action described in Rule 62(a)(1) [an interlocutory or final judgment in an action for an injunction or a receivership] or (2) [a judgment or order that directs an accounting in an action for patent infringement]. The bond may be given upon or after filing the notice of appeal or after obtaining the order allowing the appeal. The stay takes effect when the court approves the bond.
Rule 62(d).

1  (1) the complexity of the collection process; (2) the amount of time required to obtain

2  a judgment after it is affirmed on appeal; (3) the degree of confidence that the district

3  court has in the availability of funds to pay the judgment; (4) whether the defendant's

4  ability to pay the judgment is so plain that the cost of a bond would be a waste of

5  money; and (5) whether the defendant is in such a precarious financial situation that

6  the requirement to post a bond would place other creditors of the defendant in an

7  insecure position.

8  *Dillon v. City of Chicago*, 866 F.2d 902, 904-05 (7th Cir. 1988) (internal citations and quotation

9  marks omitted).

10  Ninth Circuit courts regularly use these factors. *See Biltmore Assocs., L.L.C., as Tr. v. Twin City*

11  *Fire Ins. Co.*, No. 205-CV-04220 PHX FJM, 2007 WL 2422053, *1 (D. Ariz. Aug. 22, 2007)

12  (unreported); *U.S. v. Simmons*, No. CV F 96-5948 AWI DLB, 2002 WL 1477460, *1 (E.D. Cal.

13  May 14, 2002) (unreported); *F.T.C. v. Publ'g Clearing House, Inc.*, No. CV-S-94-623 PMP (LRL),

14  1995 WL 792074, *1 (D. Nev. Jul. 13, 1995) (unreported); *Translogic Tech., Inc. v. Hitachi, Ltd.*,

15  No. CIV. 99-407 PA, 2006 WL 897995, *5-*6 (D. Or. Apr. 06, 2006) (unreported); *U.S. v. Boyce*,

16  148 F.Supp.2d 1069, 1096 (S.D. Cal. 2001).

17  Although the issue here is whether to stay under Rule 62(b)(4), pending disposition of a

18  Rule 60 motion, the *Dillon* factors are still applicable, save for the second, which should be

19  construed as addressing the time it will take to dispose of Moyer's Motion. Taking these factors in

20  turn, the Court finds: (1) the process of foreclosing or otherwise executing the government's liens is

21  not complex; (2) the time to dispose of Moyer's Motion is short; (3) 243 Alicante has been and

22  appears physically and financially secure; (4) 243 Alicante is sufficiently available for liquidation,

23  such that a bond would be a waste of money; and (5) unless the house itself secures a bond, using

24  Moyer's other assets to secure one would make them unavailable to cure any deficiency remaining

25  after the house's forced sale or other disposition. Thus, the *Dillon* factors do not favor the posting of

26  security, pending the disposition of Moyer's Motion.

27  ///

28  ///

### G.    Conclusion

Based on the foregoing, Moyer is entitled to a stay under Rule 26(b)(4), pending the Court's disposition of his Rule 60(b)(1) Motion.

### CONCLUSION

Accordingly, the Court GRANTS in part and DENIES in part defendant Charles Grady Moyer's Ex Parte Motion to Set Aside Order of Sale Entered July 7, 2008 Based on Fraud or Mistake and in Violation of 26 U.S.C. § 6331(j) (the "Motion") [Docket No. 50]. Specifically, the Court STAYS its Order dated July 7, 2008 [Docket No. 47], pending disposition of the Motion. In this regard, the Court ORDERS that the parties other than Moyer have until September 4, 2008 to file oppositions or other pleadings in response to the Motion and addressing the issues raised in this Order. Moyer then has until September 11, 2008 to file a reply or other pleading. Unless the Court advises the parties otherwise, it will not set a hearing on the Motion, as it will consider the matter submitted on the pleadings when Moyer files his reply or other pleading.

Because of this briefing schedule, the Case Management Conference set for September 17, 2008 at 3:15 p.m., *see* Docket No. 48, is continued to November 19, 2008 at 2:30 p.m. The parties shall **meet and confer** prior to the conference and shall prepare a joint Case Management Conference Statement which shall be filed no later than ten (10) days prior to the Case Management Conference that complies with the Standing Order for All Judges of the Northern District of California and the Standing Order of this Court. Plaintiff(s) shall be responsible for filing the statement as well as for arranging the conference call. All parties shall be on the line and shall call (510) 637-3559 at the above indicated date and time.

IT IS SO ORDERED.

August 12, 2008

for    _Saundra Brown Armstrong_
United States District Judge

20

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA


USA,

               Plaintiff,

   v.

CHARLES MOYER et al,

               Defendant.
_____/

Case Number: CV07-00510 SBA

**CERTIFICATE OF SERVICE**


I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on August 12, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.


Charles Grady Moyer
243 Alicante Court
Danville, CA 94526


Dated: August 12, 2008

                      Richard W. Wieking, Clerk
                      By: LISA R CLARK, Deputy Clerk