UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CHARLES GRADY MOYER, ASSOCIATED FEE ADJUSTERS, STEPHEN E. TRETTIN AND PAMELA J. TRETTIN FAMILY TRUST, CYRUS KILLEN, NINO GIANELLI, STATE BOARD OF EQUALIZATION, WALLACE KRESLEY, and F.J. SOLVIEN-MEGLIN,<br><br>Defendants. | Case No: C 07-00510 SBA<br><br>**ORDER** |

The United States of America ("the Government") commenced this action against Charles Grady Moyer ("Moyer") seeking to reduce his federal tax assessments to judgment and to foreclose upon federal tax liens on Moyer's property located at 243 Alicante Court, Danville, California (the "Property"). The Court previously issued an Order of Sale permitting the Government to sell the Property. In turn, Moyer filed Ex Parte Motion to Set Aside Order of Sale. The parties, however, have reached an agreement regarding the sale of the Property. Thus, the only dispute remaining is which lienor, the State Board of Equalization ("Board of Equalization") or First American Title Insurance Company ("First American"), has priority to the proceeds from the lien sale. Dkt. 80, 81. Having read and considered the papers submitted in connection with this matter, and being fully informed, the Court finds that First American has lien priority over the Board of Equalization.[1]

---

[1] The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I. BACKGROUND

### A. PROCEDURAL SUMMARY

The parties are familiar with the facts of this case, which are summarized briefly herein only to the extent they are pertinent to the instant motion. On January 25, 2007, the Government commenced this action against Moyer under 26 U.S.C. §§ 7401 and 7402 alleging that he owes at least $169,045.59 in taxes and that it seeks to sell the Property to satisfy that obligation. Dkt. 10 ¶¶ 1-2, 5. In addition to Moyer, the amended complaint filed on August 22, 2007, names Associated Fee Adjusters, Stephen E. Trettin and Pamela J. Trettin Family Trust ("Trettin"), Cyrus Killen, Nino Gianelli ("Gianelli"), State Board of Equalization ("Board of Equalization"), Wallace Kresley and F.J. Soliven-Meglin as parties who allegedly claim an interest in the Property. Dkt. 10 ¶¶ 6-12.[2]

On January 31, 2008, the Government and Moyer stipulated that a judgment "for the tax periods ending March 31, 1992 and December 31, 1992 be entered against him and in favor of the United States in the total amount of $169,045.59, plus statutory interest and additions from February 14, 2007 until paid." Dkt. 28. The Court approved the stipulation and conditionally dismissed the action. Dkt. 29, 31. After Moyer did not comply with the terms of the settlement, the Court reopened the action at the request of the Government, the Board of Equalization and Trettin. Dkt. 39. Subsequently, the Court granted the Government's unopposed motion for an Order of Sale, which permitted the Government to sell the Property. Dkt. 47.

Moyer filed a motion to set aside the Order of Sale in which he argued, among other things, that the sale of the Property would not generate any proceeds and therefore is barred under 26 U.S.C. § 6331(j). The Court stayed the Order of Sale pending the submission of further briefing by the parties. Dkt. 56. The parties have since reached a tentative agreement in which Moyer has agreed to the sale of the Property. To that end, the parties have requested a thirty-day time period to finalize and submit a stipulation for the sale of

---

[2] Gianelli and the Trettin Trust subsequently assigned their liens to First American. Dkt. 27, 46. By stipulation, the parties have jointly requested the joinder of Jon R. Vaught as a party-defendant. Dkt. 97. The Court approves said request.

the Property in accordance with 26 U.S.C. § 7403. Dkt. 103.[3] However, two of the parties—the Board of Equalization and First American—cannot agree which of them has priority to the sale proceeds from the Property. The Court, therefore, addresses this remaining issue based on the supplemental briefing provided by both parties. Dkt. 80, 81, 84, 95.

### B. FACTS RELATING TO PRIORITY ISSUE

Moyer assumed title to the Property in May 1976. Since that time, a number of involuntary liens and deeds of trust have been recorded against the Property. Specifically, in 1992, Gianelli obtained a judgment against Moyer in the sum of $10,286.19, which he recorded against the Property on April 18, 2001. He renewed the judgment in December 2002. First American purchased the judgment from Gianelli on December 6, 2007, which it then filed with the Court on January 9, 2008. Dkt. 80-3 ¶ 7, Dkt. 27. Gianelli's lien now exceeds $30,684.06, and continues to accrue interest. Dkt. 80-3 ¶ 8.

In the meantime, on or about May 1, 2001, Moyer filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Northern District of California. See In re Charles Grady Moyer, N.D. Cal. Bankr. Ct., No. 01-42478. On March 11, 2002, the Bankruptcy Court issued an order granting Moyer's motion to obtain secured credit. Dkt. 80-1, Exs. 9 & 10. The Order states, in pertinent part, that: "Charles Moyer is allowed to borrow no more than the sum of $315,000.00 on a secured basis. *The lender who loans Charles Moyer this amount shall be entitled to a senior lien on that certain real property located at 243 Alicante Court, Danville, California*." Id. (emphasis added). The Order specifically states that the $315,000 loan would be deemed senior to the three liens previously recorded by the Board of Equalization. Id. at 2-3. Subsequently, the loan was

---

[3] The parties have indicated that they are in the process of drafting a stipulation for the sale of the Property, and that they are amenable to the conditional dismissal of the action with the understanding that the Court retains the authority to enter such stipulation upon its submission.

funded by Walnut Creek Mortgage & Investment Corporation ("WCMIC") and secured by a deed of trust recorded against the Property. Id. Ex. 11.[4]

In 2006, Moyer refinanced the Property with a $555,000 loan funded by Performance Mortgage Investors Fund, LLC ("Performance Mortgage"). Performance Mortgage paid $327,162.48 of the loan proceeds to WCMIC to satisfy the note held by WCMIC. Dkt. 80-2 ¶¶ 1, 2, 10, 11. A deed of trust in the amount of $555,000 was recorded against the Property. Id. ¶ 6. Based on Moyer's representations, it was Performance Mortgage's understanding that it would assume a first-priority lien position upon paying off the prior lien held by WCMIC. Id. ¶ 4. Although its tax liens had been recorded against the Property, the Board of Equalization's liens were not paid due by Cornerstone Title Company ("Cornerstone"), a subsidiary of First American which acted as the escrow agent for the transaction.

In March 2006, Performance Mortgage assigned the promissory note and deed of trust to Trettin. In turn, Trettin assigned the note and deed of trust to First American on June 14, 2008. Dkt. 80-4 ¶ 9. Moyer is in default on the $555,000 loan, and the payoff demand is $673,598.29. Dkt. 80-3 ¶ 10.[5] First American contends that it is equitably subrogated to the "superpriority" status conferred to WCMIC by virtue of the 2002 Bankruptcy Court order. The Board of Equalization counters that such Order is of "no effect" and that First American cannot satisfy two of the five requirements for equitable subrogation. The Court discusses these issues below.

---

[4] The Order was issued pursuant to 11 U.S.C. § 364(d)(1), which provides, in part, that "[t]he court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien . . . ." This provision allows the bankruptcy court to "prime" the lien, meaning that the lien has "superpriority." See Suntrust Bank v. Den-Mark Const., Inc., 406 B.R. 683, 688 (E.D.N.C. 2009).

[5] The actual payoff likely is greater due to the continuing accrual of interest.

## II. DISCUSSION

### A. LEGAL OVERVIEW

Federal law determines the priority of competing liens on property on which there is a federal tax lien. See Aquilino v. United States, 363 U.S. 509, 513 (1960) (citations omitted); United States v. Acri, 348 U.S. 211, 213 (1955) ("The relative priority of the lien of the United States for unpaid taxes is . . . always a federal question to be determined finally by the federal courts."). "[P]riority for purposes of federal law is governed by the common-law principle that 'the first in time is the first in right.'" U.S. By and Through I.R.S. v. McDermott, 507 U.S. 447, 449 (1993) (internal quotation marks and citations omitted). A tax lien arises automatically when the tax amount is assessed as owing, and it has priority over most other liens, even if it is not recorded. See 26 U.S.C. § 6323; see United States v. City of New Britain, 347 U.S. 81, 86 (1954) ("[T]he priority of each statutory lien contested here must depend on the time it attached to the property in question and became choate.").

Equitable subrogation is a state law doctrine which "permits a person who pays off an existing encumbrance to assume *the same priority position as the holder of that encumbrance*." Han v. United States, 944 F.2d 526, 528 (9th Cir. 1991) (emphasis added). Under California law, equitable subrogation is generally appropriate where:

> (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt paid, (4) the subrogee paid off the entire encumbrance, and (5) subrogation would not work any injustice to the rights of the junior lienholder.

Mort v. United States, 86 F.3d 890, 893-894 (9th Cir. 1996). Equitable subrogation is a broad equitable remedy and is not circumscribed by a narrow application of the aforementioned factors. Id. Rather, the doctrine also applies "whenever one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter." Id. (internal quotations or citations omitted).

## B. CONTENTIONS

### 1. The 2002 Bankruptcy Court Order

First American contends that it is equitably subrogated to the lien priority accorded to WCMIC under the terms of the 2002 Bankruptcy Court order. As discussed, that Order granted Moyer the ability to obtain $315,000 in financing, and importantly, provided that the lender of such loan was entitled to priority over the Board of Equalization liens, among others. The Board of Equalization now argues that the Bankruptcy Court's Order has "no effect" under 11 U.S.C. § 349(b) because the bankruptcy proceeding has been dismissed. Dkt. 81 at 8. Section 349(b), which governs the effect of dismissal of a bankruptcy case, states, in pertinent part, that "[u]nless the court, for cause, orders otherwise, a dismissal of the case other than under section 742 of this title – [¶] . . . vacates any order, judgment, or transfer ordered under section 522(i)(1), 542, 550, or 553 of this title . . . ." 11 U.S.C. § 349(b)(2).

"The basic purpose of [Section 349(b)] is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case." In re Aheong, 276 B.R. 233, 239 (B.A.P. 9th Cir. 2002) (internal quotation marks and citations omitted). However, § 349(b)(2) only applies to orders or judgments specifically identified in that provision. See, e.g., In re Gardenhire, 209 F.3d 1145, 1152 (9th Cir. 2000) (holding that order issued under 11 U.S.C. § 502(b)(9) was not affected by the dismissal of the bankruptcy action because it is not among the Code provisions subject to § 349); In re Carraher, 971 F.2d 327, 328 (9th Cir. 1992) (jurisdiction unaffected by dismissal of bankruptcy case where termination order was not within the purview of § 349); In re Arneson, 282 B.R. 883, 891 n.3 (B.A.P. 9th Cir. 2002) (noting that a discharge under 11 U.S.C. § 523 is "not on the list of automatically vacated judgments"). The 2002 Order at issue was expressly predicated *on 11 U.S.C. § 364(d)(1)*. Dkt. 80-1.

Since § 364 not among the statutes listed in § 349(b), the aforementioned authorities counsel the Court to conclude that such Order remains valid and binding.[6]

### 2. Equitable Subrogation Factors

Alternatively, the Board of Equalization contends that First American cannot meet the first and fifth elements of an equitable subrogation claim; i.e., that the subrogee made the payment to protect his or her own interest and that subrogation would not work any injustice to the rights of the junior lienholder, respectively. Neither contention has merit.

#### *a)* *First Prong*

The first prong of the test for equitable subrogation requires a showing that the putative subrogee satisfied a prior debt "to protect its own interest and not as a volunteer." Fireman's Fund Ins. Co. v. Maryland Cas. Co., 65 Cal. App. 4th 1278, 1292 (1998). In this case, Performance Mortgage paid the $315,000 lien in 2006 when Moyer refinanced his loan. According to the Board of Equalization, Performance Mortgage was acting as a volunteer since it allegedly satisfied the WMCIC lien as a matter of "contractual obligation." Dkt. 81 at 11. However, the Ninth Circuit has recognized that California law allows for equitable subrogation where a subrogee pays off a preexisting debt in order to secure a deed of trust on the property. See Mort, 86 F.3d at 894 & n.2 ("A person who lends money to pay off an encumbrance on property and secures the loan with a deed of trust on that property is not a volunteer for purposes of equitable subrogation.") (citing Katsivalis v. Serrano Reconveyance Co., 70 Cal. App. 3d 200 (1977). Thus, the Court

---

[6] The Board of Equalization also argues that the Bankruptcy Court Order does not confer priority to First American because the Order pertained only to Moyer's $315,000 loan through WCMIC, and not his subsequent loan of $555,000 from Performance Mortgage. Dkt. 81 at 8. This argument is misguided. First American is not claiming that that it is entitled to lien priority to the entire $555,000 loan, but rather, that is entitled to priority as to the $327,162.48 in connection with the pay-off of the $315,000 loan.

- 7 -

rejects the Board of Equalization's contention that First American was acting as a volunteer.[7]

### b) Fifth Prong

The fifth element of the equitable subrogation test provides that "[s]ubrogation must not work any injustice to the rights of others." See Caito v. United Cal. Bank, 20 Cal. 3d 694, 704 (1978). The Board of Equalization claims that it is an "innocent creditor" and that First American and Moyer will be unjustly enriched if First American is accorded lien priority. This contention, however, is belied by the fact that the Board of Equalization has been dilatory in seeking to protect any rights it has against the Property. Though the Board of Equalization recorded tax liens in 1992 and 1993, such liens were based on tax liabilities dating as far back as 1987. When the Bankruptcy Court elevated WCMIC's liens above those of the Board of Equalization in 2002, the Board of Equalization took no action to challenge that decision. Nor is there any evidence that the Board of Equalization made any effort to foreclose on its liens prior to the entry of such Order. Thus, the possibility that the Board of Equalization may now recover nothing once the Property is sold is entirely of its own doing.

Equally without merit is the Board of Equalization's assertion that its liens were not satisfied during Moyer's 2006 refinancing due to Cornerstone's alleged negligence in failing to uncover the liens. The fact that prior liens were recorded against the Property does not foreclose application of equitable subrogation, absent a showing that the party seeking subrogation had actual knowledge of the other liens. Smith v. State Savings & Loan Ass'n, 175 Cal. App. 3d 1092, 1098 (1985). Here, there is no evidence of actual

---

[7] United States v. Finch, No. CV 07 3317, 2008 U.S. Dist. LEXIS 1239 (C.D. Cal. Jan. 7, 2008) is distinguishable. In that case, the lender seeking equitable subrogation refinanced its own loan which was already secured by a deed of trust. In other words, the lender paid off the initial loan in exchange for the debtor's renewed indebtedness to the same lender. It was for that reason that the district court ruled that the lender was not protecting its own interest when refinancing the existing debt. In contrast, Performance Mortgage was not refinancing its own loan to Moyer and had no existing interest in the Property. Thus, Performance Mortgage did not pay off an existing lien in exchange for a renewed indebtedness by Moyer, as was the case in Finch. To the contrary, Performance Mortgage paid off the WCMIC loan to ensure its first lien against the Property.

knowledge on the part of First American or its subsidiary Cornerstone. The Board of Equalization's unsupported assertion that Cornerstone *should have* discovered the existence of its liens is tantamount to a claim that constructive knowledge automatically precludes equitable subrogation—which plainly is not the law in California. See <u>Lawyers Title Ins. Corp. v. Feldsher</u>, 42 Cal. App. 4th 41, 47 (1996) (noting that the California Supreme Court has "rejected the contention constructive knowledge of an intervening lien operated as a bar to equitable subrogation") (citing <u>Darrough v. Herbert Kraft Co. Bank</u>, 125 Cal. 272 (1899)). In sum, the Board of Equalization has failed to persuade the Court that it, or any other party, will suffer an injustice if First American holds the lien in first position against the Property.

## III. **CONCLUSION**

For the reasons set forth above,

IT IS HEREBY ORDERED THAT:

1. Defendant Moyer's Ex Parte Motion to Set Aside Order of Sale Entered July 7, 2008 is DENIED (Dkt. 50) is without prejudice. The parties shall have until November 4, 2011 to file a stipulation and proposed order for the sale of the Property.

2. Jon R. Vaught is joined as party-defendant in this action.

3. The Court finds that First American holds a first lien position in the amount of $327,162.48 against the Property.

4. There being no further issue remaining for the Court's determination, the instant action and all claims asserted herein are dismissed with prejudice, except the Court reserves the right to enter a stipulated order of sale. In the event that a stipulation for the sale of the Property is not reached, any party may request to Court to reopen the action and to schedule a Case Management Conference forthwith, provided that such request is filed with the Court within 60 days of the date this Order is filed. The Clerk shall close the file.

IT IS SO ORDERED.

Dated: September 29, 2011

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge